# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**INOFIN INCORPORATED,**                                    Chapter 7
     Debtor                                    Case No. 11-11010-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MARK G. DeGIACOMO, CHAPTER 7**
**TRUSTEE OF THE ESTATE OF**
**INOFIN INCORPORATED,**
     Plaintiff
v.                                                        Adv. P. No. 11-1136
**RAYMOND C. GREEN, INC.,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Partial Summary Judgment on Counts I and II of the First Amended Adversary Complaint filed by Mark G. DeGiacomo, the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") of Inofin Incorporated ("Inofin" or the "Debtor"). Raymond C. Green, Inc. ("RCG" or the "Defendant") filed an Opposition to the Trustee's Motion and the Trustee filed a Reply to the Opposition. The Court heard the Trustee's Motion for Partial Summary Judgment on October 1, 2012[1] and took it under

---

[1] The Court also heard RCG's Cross-Motion for Summary Judgment on the Trustee's First Amended Adversary Complaint and Its Motion for Partial Summary Judgment on Counts I-III of Its Counterclaim.

advisement.  For the reasons set forth below, the Court shall enter orders denying the Trustee's Motion.

## II. PROCEDURAL BACKGROUND

On February 9, 2011, approximately 38 creditors holding claims in the stated amount of $12,927,517.75 filed an involuntary petition against Inofin.  In an Emergency Motion for the Appointment of an Interim Chapter 7 Trustee, they alleged that the Debtor was a licensed financial service company, specializing in providing financing for used motor vehicle sales that did not meet traditional financing criteria, that the Debtor primarily funded its lending activities through borrowings from numerous individuals and entities, including the petitioning creditors, and that it had loan obligations of approximately $70 million owed to approximately 200 creditors.  RCG, the Debtor's largest lender, filed a Statement in Support of the Emergency Motion.

Although the Court denied the Emergency Motion, on February 16, 2011, it entered an order for relief.  The Trustee was appointed interim trustee and his appointment became permanent when creditors did not request an election of a trustee at the section 341 meeting of creditors held on April 19, 2011.

On March 9, 2011, RCG filed the "Motion by Raymond C. Green, Inc. for Relief from the Automatic Stay and for Related Relief" (the "Motion") to which it attached eight exhibits.  Pursuant to its Motion, RCG sought a determination that the automatic stay did not apply to its rights with respect to a portfolio of motor vehicle retail installment contracts, which were assigned to it by Inofin purportedly to secure loans to Inofin in

excess of $8 million, or, in the alternative, relief from the automatic stay pursuant to 11

U.S.C. § 362(d) to obtain that portfolio which it contended was its collateral and the subject

of valid, prepetition foreclosure sales. RCG also sought a finding that it was entitled to

possession of the portfolio, including, without limitation, all of the proceeds of the portfolio

and all documents, books and records in the possession of the Chapter 7 Trustee relating

to the portfolio, by reason of two foreclosure sales conducted prior to the entry of the order

for relief. In short, it maintained that the portfolio was its property and not property of the

bankruptcy estate.

The Chapter 7 Trustee filed an Objection to the Motion, and the Court conducted an

evidentiary hearing on May 16, 2011. At the hearing, six witnesses testified and 38 exhibits

were introduced into evidence. In a Memorandum and Order dated July 27, 2011, *see* In

re Inofin, Incorporated, 455 B.R. 19 (Bankr. D. Mass. 2011), the Court identified the

following issues: 1) whether RCG had a valid security interest in the portfolio of retail

installment contracts assigned to the Debtor by various automobile dealers; and 2) whether

its foreclosure sales divested the estate of an interest in the portfolio. The Court

determined that resolution of those issues in RCG's favor would determine whether it had

established a colorable claim to relief under 11 U.S.C. § 362(d). *See* Grella v. Salem Five

Cent Savs. Bank, 42 F.3d 26, 32 (1st Cir. 1994). In its decision, the Court held that RCG had

failed to establish a colorable claim to relief from stay because its Security Agreement dated

April 17, 1996 did not provide RCG with an enforceable security interest in Retail

Installment Contracts delivered to it after October 1, 2010. Because the loan proceeds

advanced by RCG could not be traced to its purported collateral, the Court found that its

security interest did not attach and was not enforceable as to that collateral and that its

possession of the Retail Installment Sale Contracts by reason of the Allonge assignments

did not establish independent security agreements.   In addition, the Court found that

RCG's foreclosure sales were not conducted in a commercially reasonable manner, 455 B.R.

at 46, and that RCG did not obtain a purchase money security interest ("PMSI") in

consumer automobiles. Id. at 50.            In its decision, the Court observed:

> To the extent RCG, in effect, is seeking a determination of the validity and
> extent of its lien, it was required to commence an adversary proceeding. *See*
> Fed. R. Bankr. P. 7001(2).  The Trustee, however, did not raise that procedural
> issue.   *See* Aegean Fare, Inc. v. Comm. of Mass.  Dept. of Revenue (In re
> Aegean Fare, Inc.), 33 B.R. 745, 746 n.1 (Bankr. D. Mass. 1983). Due to the
> extensive briefing of the issues relating to the validity and extent of RCG's
> lien, the Court concludes that the parties consented to the determination of
> those issues in the context of RCG's Motion.

In re Inofin, Incorporated, 455 B.R. at 23 n.1.

On April 25, 2011, one day before a preliminary hearing on the Motion for Relief

From Stay,[2] the Plaintiff filed a complaint against RCG.  The original complaint contained

16 counts and included claims for (i) declaratory judgment that (a) RCG's purported

_____

[2] At the April 26, 2011 preliminary hearing on the Motion, the Trustee proposed to
consolidate the Motion and the adversary proceeding and to schedule an evidentiary
hearing on a fast track.  He noted that "a lot of the same evidence is going to come in at
both times."  Counsel to RCG identified the issue as "are the loans that Mr. Green claims
he owns property of the estate?"  He rejected the Trustee's proposal.  He stated: ". . . the
problem that we have is that these loans, they're loans that term out very quickly.
They're short-term loans, they're paid weekly.  To go through the time waiting four
months just to get a decision on this issue is - - is one that his not acceptable to my client.
. . ."

security interest and pre-petition foreclosure sales were invalid; and (b) the Defendant is

a non-statutory insider; (ii) equitable subordination pursuant to 11 U.S.C. § 510(c)(1);

avoidance of certain transfers the Debtor made to the Defendant as preferential or

fraudulent under 11 U.S.C. §§ 547(b) and 548 and M.G.L. c. 109A §§ 5 and 6.   At the

preliminary hearing on the Motion, RCG expressly rejected consolidation of the Motion

and the  adversary proceeding for trial.

RCG appealed this Court's July 27, 2011 order to the United States Bankruptcy

Appellate Panel for the First Circuit (the "BAP").  In its Designation of Items to be Included

in the Record and Issues to be Presented on Appeal, RCG did not suggest that the Court

erred in deciding that it had failed to establish a colorable claim for relief.  Rather, it framed

the appellate issues as, for example, whether the Court erred in holding that RCG did not

possess an enforceable security interest in the Retail Installment Contracts assigned and/or

delivered to it.   Following RCG's appeal, the Court at the request of the parties entered

several orders staying the adversary proceeding and extending the deadlines in the Joint

Discovery Plan.

On March 6, 2012, the BAP issued a decision dismissing the Defendant's appeal. *See*

Raymond C. Green, Inc. v. DeGiacomo (In re Inofin Incorporated), 466 B.R. 170 (B.A.P. 1st

Cir. 2012).  In its decision, the BAP stated:

> Ordinarily, "the hearing on a motion for relief from stay is meant to be a
> summary proceeding," Grella v. Salem Five Cent Savings Bank, 42 F.3d 26,
> 31 (1st Cir. 1994), because "such hearings do not involve a full adjudication
> on the merits of claims, defenses, or counterclaims, but simply a
> determination as to whether a creditor has a colorable claim to property of

the estate." Id. at 32. Thus, it follows that when relief from stay is denied because a moving party has failed to make the necessary showing of a colorable claim in a non-evidentiary hearing, the order denying relief would not be a final order. *See* Henriquez, 261 B.R. at 71. This is particularly so when, as in Henriquez, there is a pending adversary proceeding encompassing the same issues. Then, "such a determination must necessarily await the resolution of the trustee's adversary proceeding." Id. However, absent a pending adversary proceeding, when a bankruptcy court considers "any defenses or counterclaims that bear on whether a colorable claim exists" as a prelude to the denial of relief from stay, the order denying relief may be ripe for appellate review. United States v. Fleet Bank of Mass. (In re Calore Exp. Co., Inc.), 288 F.3d 22, 35 (1st Cir. 2002).

All of this suggests a fact specific, case-by-case inquiry on the question of finality. The hearing below was plenary and the bankruptcy court rendered comprehensive findings and conclusions with the consent of the parties. *Those findings and conclusions appear to support the entry of a partial judgment on one or more of the counts in the pending adversary proceeding.* And therein lies the rub. "The finality requirement represents an attempt to avoid duplicative or piecemeal appeals." McGowan v. Global Indus., Inc. (In re Nat'l Office Prods., Inc.), 116 B.R. 19, 20 (D. R.I. 1990).

On this record, we cannot say that there is nothing more for the court to do but execute the judgment. Because the bankruptcy court's determination on the motion for relief is inextricably intertwined with the unresolved issues in the adversary proceeding, entertaining an appeal at this time would set "the stage for the fragmentation of appellate review." . . .

In re Inofin Inc., 466 B.R. at 174-75 (emphasis supplied).[3]

---

[3] In In re Nat'l Office Prods., Inc., 116 B.R. 19 (D. R.I. 1990), the court stated:

For purposes of appeals, courts have characterized orders as "final" more liberally in bankruptcy proceedings than in ordinary civil litigation. In re Looney, 823 F.2d 788, 790 (4th Cir.), *cert. denied sub nom.* Looney v. Grundy Nat'l Bank, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987); In re American Colonial Broadcasting Corp., 758 F.2d 794, 801 (1st Cir. 1985). The First Circuit has determined that in bankruptcy cases a "final" order need not dispose of the entire bankruptcy proceeding. *See* Tringali v. Hathaway Machinery Co., 796 F.2d 553, 558 (1st Cir.1986). Although in civil litigation an order generally becomes final only when it resolves the entire

Approximately two weeks after the BAP issued its decision, the Trustee moved

amend his Complaint.  In the absence of an objection from RCG, the Court granted the

Trustee's Motion. On April 4, 2012, the Trustee filed an 18-count First Amended Adversary

Complaint (the "Amended Complaint").  RCG answered the  Amended Complaint and

filed a Counterclaim.  Pursuant to its Counterclaim, RCG seeks (i) a declaration that RCG

holds a valid, perfected and enforceable first priority security interest in the RCG Collateral

(and all collection proceeds thereof) (Count I), (ii) an accounting of the proceeds of the RCG

Collateral by the Trustee and an accounting of the proceeds of the RCG Portfolio (Count

II), (iii) the payment to RCG by the Trustee of the proceeds of the RCG Collateral and the

RCG Portfolio, net of court-approved collection costs until such time as the RCG Collateral

is fully liquidated by the Trustee (Count III), (iv) a determination of RCG's claim against

this estate for breach of contract and default under applicable loan agreements (Count IV);

and (v) a determination of RCG's claim against this estate for violations by the Debtor of

---

litigation or when it irrevocably decides the rights of all parties involved, In re Johns–Manville Corp., 824 F.2d 176, 179 (2d Cir. 1987); In re Leibinger–Roberts, Inc., 92 B.R. 570, 572 (E.D.N.Y. 1988), an order in a bankruptcy proceeding need only "conclusively determine" a "discrete dispute within the larger case." In re American Colonial Broadcasting Corp., *supra*, 758 F.2d at 801; In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1983). When an order, entered or not, resolves only a preliminary matter, it will not constitute a final order for purposes of an appeal. *See* In re Leibinger–Roberts, Inc., *supra*, 92 B.R. at 572 (considering an order entered by bankruptcy court). The finality requirement represents an attempt to avoid duplicative or piecemeal appeals. Central Ill. Sav. & Loan, *supra*, 85 B.R. at 477.

116 B.R. at 20.

Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count V).

Prior to and at the October 1, 2012 hearing, the Trustee represented that he was withdrawing various counts of his 18-count Amended Complaint. In particular, the Trustee stated on the record that he withdrew counts VI (Declaratory Judgment—the Defendant is a Non-Statutory Insider); Count VII (Equitable Subordination Pursuant to 11 U.S.C. § 510(c)(1)); Count VIII (Preference Pursuant to 11 U.S.C. § 547(b)—The Foreclosure Sale); Count XI (Preference Pursuant to 11 U.S.C § 547(b)—The Foreclosure Sale); Count XII (Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and M.G.L. c. 109A § 6(a)—Security Documents); Count XIII (Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)—Security Documents); Count XIV (Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and M.G.L. c. 109A § 5(a)(2)—Loan Modification Collateral); Count XV (Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and M.G.L. c. 109A § 6(a)—Loan Modification Collateral); and Count XVI ((Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)—Loan Modification Collateral). Accordingly the remaining counts are:

> Count I (Declaratory Judgment—Validity of the Defendant's Security Intent);
> Count II (Declaratory Judgment—Defendant's Foreclosure Sale is Void Due to Lack of Security Interest);
> Count III (Declaratory Judgment—Defendant's Foreclosure Sale is Void Due to Bad Faith);
> Count IV (Violation of Mass. Gen. Laws c. 106, § 9-625(a));
> Count V (Violation of Mass. Gen. Laws c. 93A, §§ 2 and 11);
> Count IX (Preference Pursuant to 11 U.S.C. § 547(b)—Security Documents);
> Count X (Preference Pursuant to 11 U.S.C. § 547(b)—Loan Payments);
> Count XVII (Recovery Pursuant to 11 U.S.C. § 550); and
> Count XVIII (Preservation of Avoided Transfers Pursuant to 11 U.S.C. §

551).[4]

As noted above, the Trustee seeks partial summary judgment with respects to Counts I and II only. RCG seeks summary judgment with respect to all the remaining counts of the Trustee's Amended Complaint and on Count I - III of its Counterclaim:

> Counterclaim Count I (Declaratory Judgment –Validity of RCG's Security Interest);
> Counterclaim Count II (Accounting); and
> Counterclaim Count III (Payment of Proceeds).

In opposing the Trustee's Motion for Partial Summary Judgment, in addition to legal arguments summarized below, RCG notes that since the BAP remanded the matter to this Court the Trustee has produced thousands of additional pages of documents to RCG and RCG has retaken the depositions of the Trustee, Richard Sgarzi ("Sgarzi"), a secured lender, Kevin J. Mann, Sr. ("Mann"), the Debtor's Chief Executive Officer, Michael Cuomo ("Cuomo"), Inofin's President, and Inofin employees, namely Michael Ayre, Teresa Brown, and Margaret Adams, served interrogatories and received answers to them from the Trustee. In addition, the Trustee has taken the depositions of RCG's counsel, Stanley Wallerstein ("Wallerstein") and D. Ethan Jeffery ("Jeffrey"), and RCG's auctioneer, Stephen

---

[4] The Trustee observed in his Memorandum in Support of his Motion for Partial Summary Judgment that if he obtains final judgment in his favor on Counts I and II, it will be unnecessary to proceed with remaining Counts III, IV, and IX, unless the judgment is disturbed on appeal. In his view, because those Counts relate to avoidance claims and claims related to the validity of RCG's purported foreclosure sales, they would be mooted by a final determination that RCG had no valid security interest because the Trustee would then possess all such security interest documents free and clear of any claim of RCG. Thus, if the Trustee were to prevail, the only Counts in contention from his point of view would be essentially be Counts X, XVII, and XVIII.

Dean. The Trustee has also re-taken the depositions of Raymond C. Green ("Green"), Joan

Green and Sgarzi produced an additional 2,918 pages of documents.

## III. JURISDICTION AND AUTHORITY

In its Answer and Counterclaim, RCG admitted that Counts I, II, VII, IX, X, XVII and

XVIII of the Trustee's Amended Complaint are core proceedings.  It denied that Count III,

IV, and V are core proceedings and stated that it did not consent to entry of final orders by

this Court with respect to those Counts.  With respect to its Counterclaims, it asserts that

Counts I, II and III are core proceedings and that Counts IV and V are non-core

proceedings.

Because RCG filed a proof of claim in this case on July 18, 2011, nine days before the

Court issued its decision on its Motion for Relief from Stay, this Court has jurisdiction

pursuant to 28 U.S.C. § 1334(b) and the order of reference.  The claims and counterclaims

involve core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), (K), and (O), except with

respect to Counts III, IV and V of the Amended Complaint and Counts IV and V of the

Counterclaim which are not core, but are proceedings related to the Inofin's bankruptcy

case.  *See*  Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) (citing Pacor, Inc. v. Higgins,

743 F.2d 984, 994 (3d Cir. 1984)).

## IV. SUMMARY JUDGMENT STANDARD

The United States Court of Appeals for the First Circuit articulated the standard for

summary judgment in Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir.1994).

It stated:

It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or depositions—that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Id. at 763 (1st Cir. 1994) (citations omitted, footnote omitted).[5]

In the context of the instant Motion for Partial Summary Judgment, neither party has addressed the existence of genuine issues of material fact. Rather, their focus has been on whether collateral estoppel entitles the Trustee to judgment as a matter of law.

## V. THE TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

A. Introduction

The Trustee seeks partial summary judgment in his favor with respect to Counts I and II and Count I of the Counterclaim asserting that there are no material facts in dispute and the legal issue of whether RCG has a valid security interest in its collateral was determined by this Court in adjudicating RCG's Motion. He maintains that collateral estoppel applies to bar relitigation of the issues pertinent to those counts. The Trustee relies upon the record of proceedings in this Court with respect to the Motion, as well as the

---

[5] Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. *See* Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 n.4 (1st Cir. 2011).

record of proceedings and the transcript of the hearing before the BAP and the decision of

the BAP, reproduced in pertinent part above. To the extent other parts of the record or

transcripts are pertinent they will be reproduced below.

    B. <u>The Trustee's Position</u>

    Specifically, the Trustee, citing <u>Grella v. Salem Five Cent Savs. Bank</u>, 42 F.3d 26 (1st

Cir. 1994), argues that the following four elements required for successful application of

collateral estoppel are satisfied here:  "(1) the issue sought to be precluded must be the

same as that involved in the prior action; (2) the issue must have been actually litigated; (3)

the issue must have been determined by a valid and binding final judgment; and (4) the

determination of the issue must have been essential to the judgment."  <u>Id.</u> at 30 (citing

<u>NLRB v. Donna-Lee Sportswear Co., Inc.</u>, 836 F.2d 31, 34 (1st Cir. 1987); <u>In re Sestito</u>, 136

B.R. 602, 604 (Bankr. D. Mass. 1992); <u>In re Dubian</u>, 77 B.R. 332, 337 (Bankr. D. Mass. 1987).

In <u>Grella</u>, the First Circuit observed:  "An issue may be 'actually' decided even if it is not

*explicitly* decided, for it may have constituted, logically or practically, a necessary

component of the decision reached in the prior litigation." 42 F.3d at 30-31 (citing <u>Dennis

v. Rhode Island Hospital Trust</u>, 744 F.2d 893, 899 (1st Cir. 1984) (emphasis in original).

    While RCG disputes whether all four factors have been satisfied, the parties focus

on the third requirement, the finality of this Court's judgment denying the Motion after an

evidentiary hearing at which six witnesses testified and 38 exhibits were accepted into

evidence.  This Court's decision whether or not to grant the Trustee's Motion for Partial

Summary Judgment turns on a determination of whether the July 27, 2011 order was a final

order for purposes of collaterally estopping RCG from re-litigating matters addressed in

the Motion.

The Trustee points to statements made by counsel to RCG, Wallerstein, at oral

argument before the BAP,[6] as well as case law in which courts have understood "finality"

more broadly  in the context of issue preclusion (collateral estoppel), as opposed to claim

preclusion.  The Trustee cites <u>Pure Distribs, Inc. v. Baker</u>, 285 F.3d 150 (1st Cir. 2002), in

which the court observed:

> Finality may, however, be understood more broadly when analyzed in the
> context of issue preclusion, as opposed to claim preclusion. *See* Restatement
> (Second) of Judgments § 13 (1982) ("[F]or purposes of issue preclusion (as
> distinguished from merger or bar), 'final judgment' includes any prior

---

[6] The statements are set forth below in the colloquy which took place between
judges on the BAP panel and Wallerstein:

> THE COURT: Now if - and what I need to know and we all need to know
> is did the parties agree to finally determine the enforceability of the security
> agreement in the context of the relief from stay motion so that even though it
> wasn't essential to the relief from stay decision, that determination by Judge
> Feeney will have preclusive effect in the pending adversary proceeding.

> COUNSEL TO RCG: And I'd have to say that there is no written agreement
> that says that on the appellant side. We are going on the understanding
> that you know, footnote #1 is binding on us. That she has made a final
> determination and that what she has decided is the end of the game. We
> can't go and put new evidence in and have new discussions on the issue of
> did we have a security interest.

The Court notes that during the hearing before the BAP, Wallerstein represented that
other than a scrivener's error with respect to a date in one of the promissory notes, RCG
did not contend that the Court's findings were clearly erroneous or that its explication of
the law was wrong.

adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect.").

Baker, 285 F.3d at 157 n.5. *See also* Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962)("Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); O'Diah v. New York City, No. 02-CIV 274, 2002 WL 1941179 (S.D.N.Y. Aug. 21, 2002); Better Boating Ass'n, Inc. v. BMG Chart Prods. Inc., 61 Mass. App. Ct. 542, 551-52, 813 N.E.2d 851 (2004).

C. RCG's Position

RCG argues that an extensive evidentiary hearing, lengthy briefings, and the Court's findings of fact and rulings of law in the context of the Motion simply do not make the Court's July 27, 2011 order a final order for collateral estoppel purposes.  It relies upon the decision in Grella, asserting there are no exceptions to the First Circuit's holding. Additionally, RCG addressed the finality element of collateral estoppel which would preclude relitigation of the validity of its security interest and the sale of collateral, stating:

> The Memorandum and Footnote 1 thereof was sufficiently ambiguous with regard to finality that it was prudent for RCG to appeal. However, the B.A.P., sua sponte, considered the requirements for appellate jurisdiction and dismissed RCG's appeal, concluding that this Court's order was not final.

14

That is now the law of this case. *See e.g.*, U.S. v. Bell, 988 F.2d 247, 250 (1st Cir. 1993) (discussing general principle of law of the case).

D. Analysis of the Decision in Grella and Collateral Estoppel

In Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994), Salem Five Cent Savings Bank (the "Bank") claimed to have a "perfected security interest" in 17 notes because it was "in sole and exclusive possession" of the originals. The Bank did not state or allege any other details regarding its security interest. It asserted, as a basis for relief, that the debtor was unable to provide it adequate protection for its collateral position. In response, the Chapter 7 trustee merely stated that he had not had sufficient time to review the pertinent files and determine the existence of any possible defenses to the Bank's motion. He requested a preliminary hearing on the motion, but failed to attend the hearing scheduled by the court. At the conclusion of the non-evidentiary hearing, the bankruptcy court granted the motion and entered an order lifting the automatic stay, allowing the Bank to exercise "any and all of its contractual and state law rights and remedies" with respect to the 17 notes. The bankruptcy court made no findings about the status of the Bank's security interest in the notes. 42 F.3d at 28.

After obtaining relief from stay, the Bank commenced an adversary proceeding against the trustee seeking a determination of its secured status under § 506(a), as well as turnover and accounting of funds as to the 17 notes. Specifically, it alleged only that it had a "perfected security interest" in the notes because it was "in sole and exclusive possession" of them. Id. at 28-29. The trustee answered the complaint, denying the Bank's

15

allegation that it had a perfected security interest in the notes because of its exclusive possession. In addition, he asserted as an affirmative defense that the Bank did not perfect its security interest in one note prior to 90 days before the Debtor filed its bankruptcy petition. The trustee also advanced a counterclaim in which he alleged that the Bank's interest in one of the notes was avoidable as a preferential transfer.  Id. at 29.

The Bank answered the trustee's counterclaim, asserting that the trustee was barred from pursuing his preference counterclaim on grounds of estoppel, waiver and collateral estoppel because he failed to file or pursue any objection to its Motion for Relief from Stay. The trustee then moved for summary judgment on his preference counterclaim.  The Bank opposed that motion and cross-moved for summary judgment on the ground that either res judicata or collateral estoppel barred the counterclaim, as the issue of the "validity" of the Bank's interest in the notes was decided when the Bankruptcy Court granted the relief from stay. Id.  The court denied both summary judgment motions, finding genuine issues of material fact existed with respect to "the status of the holder of the note."

The trustee then filed a motion for summary judgment on the res judicata and collateral estoppel issues, arguing that the doctrines were inapplicable to his preference counterclaim, as there had been no adjudication on the merits of the Bank's security interest during the relief from stay proceeding.  The Bank objected to the trustee's motion for summary judgment on the res judicata and collateral estoppel issues and cross-moved for summary judgment. Id.

Following a hearing on the cross-motions, the bankruptcy court granted summary

16

judgment in favor of the Bank, stating without explanation that it was treating the trustee's

preference counterclaim as an "affirmative defense." Although the court recognized that

the hearing on relief from stay was a preliminary one, the court stated:

> The question of the validity and perfection of a security interest which is the subject of a request for relief from stay goes to the heart of the issues before the court [during a relief from stay hearing]. If the security interest were invalid or unperfected, there would be no cause for relief from stay and the request would be denied. . . . The Trustee could have raised the perfection issue [underlying his preference counterclaim] at the hearing on the motion for relief. If he felt that I was wrong in denying him additional time to respond, an appeal from my order was appropriate. Having had the potential for one bite at the apple, he cannot relitigate the issue at this time.

Id. at 30.  According to the First Circuit:  "The court reasoned that the perfection issue was

necessarily, implicitly decided in the relief from stay proceedings, and thus granted

summary judgment in the Bank's favor as to the entire adversary proceeding' on collateral

estoppel or res judicata grounds."  Id.

In discussing the merits of the appeal, the First Circuit indicated that it was unclear

whether the court relied on claim or issue preclusion in entering summary judgment but

determined issue preclusion was the appropriate doctrine for its analysis.  Following a

positive discussion of the Seventh Circuit's decision in Matter of Vitreous Steel Prods. Co.,

911 F.2d 1223 (7th Cir. 1990), the First Circuit stated:

> [T]he hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick. . . . see 11 U.S.C. § 362(e). Section § 362(e) provides that a bankruptcy court must hold a preliminary hearing on a motion to lift the stay within thirty days from the date the motion is filed, or the stay will be considered lifted. A final hearing must be commenced within thirty days after the preliminary hearing. [S]ee 11 U.S.C. § 362(e).

17

> The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate.

Grella, 42 F.3d at 31-32 (case citations omitted). Although the court referenced the legislative history which provides that lift stay hearings are not the appropriate time to consider issues other than those under § 362(d), the court observed that that legislative history also provided: "'this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. *What is precluded is a determination of such collateral claims on the merits at the hearing.*'" Id. at 32-33 (emphasis in original)(citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, at 6300, and S.Rep. No. 95-989, 95th Cong., 2d Sess. 55, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, at 5841). The court also cited the Federal Rules of Bankruptcy Procedure and the limitation period under 11 U.S.C. § 546(a) for the commencement of avoidance actions in support of its view that "a hearing on a motion for relief from stay is merely a summary proceeding of limited effect." Id. at 33. It determined:

> The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. *Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property.* If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that

18

creditor to litigate its substantive claims elsewhere without violating the automatic stay.

***

[A] court may take into account any matter that bears directly on the debtor's equity, or that clearly refutes a creditor's claim to the property. For example, if a trustee raises a defense to a creditor's claim at the relief from stay hearing, the court need not ignore this defense, but may consider it when deciding whether to lift the stay. If, however, the stay is not lifted, that creditor is not barred forever from seeking payment. It must simply comply with the automatic stay, and wait with the other creditors for the estate's administration.

Conversely, if the stay is lifted, the creditor may then prosecute its claim in subsequent litigation. The trustee is not precluded from raising defenses or counterclaims in those subsequent proceedings, because the defense was not fully adjudicated, but only considered, during the preliminary hearing. As a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a colorable claim; thus, a decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere.

Id. at 33- 34 (emphasis supplied).  In rejecting the Bank's argument that allowance of the motion for relief from stay necessarily was a determination of the validity of its security interest, the Court of Appeals reiterated that it was applying a preliminary injunction standard, stating:

In a relief from stay hearing, the only issue properly before the court, and thus the only one actually adjudicated, is whether the stay should be lifted because a creditor has shown a colorable claim. Put another way, and employing the preliminary injunction analogy discussed above, a creditor must show a reasonable likelihood that it has a meritorious claim, and the court may consider any defenses or counterclaims that bear on whether this reasonable likelihood exists.

Id. at 34.  Thus, the First Circuit concluded that the bankruptcy court's order lifting the

19

automatic stay did not have preclusive effect on the Trustee's counterclaims.

As the Trustee points out, <u>Grella</u> is distinguishable from the instant case in several respects.  In the first place, the bankruptcy court in <u>Grella</u> did not conduct an evidentiary hearing and the validity of the RCG's security interest and the reasonableness of its foreclosure sale were determined by this Court in a 54-page memorandum.  The issue framed by RCG at the preliminary hearing was whether the Installment Contracts were property of the bankruptcy estate and this Court in a footnote observed that such a determination was properly requested through an adversary proceeding, not a motion to lift the automatic stay.  Moreover, counsel to RCG at the hearing before the BAP did not disavow footnote 1 of this Court's decision.  Thus, the finality of this Court's order could hinge on whether RCG is judicially estopped from challenging that element required for application of collateral estoppel, particularly where adjudication of its rights with respect to its collateral was critical to its ability to service and collect payments from consumers without the stigma and concomitant losses associated with the bankruptcy case and where RCG essentially consented to a final determination on the merits.  In this regard, it is worth noting that RCG considered the order of this Court denying its Motion as a final judgment and in its appellate brief and counsel to RCG stated the following before the BAP with respect to the Trustee's Amended Complaint:

> [I]t's basically seeking the same relief or the same issues that were discussed in the  - in the court's decision. And the court had a footnote.  The footnote one says you know, there really should have been an adversary action to determine the parties' position, but they [sic] didn't file one and I'm going to assume that this decision is going to -  is going to deal substantively with

this.  So I think we have a real rule - law of the case issue here.

There's a discovery order on this [the adversary proceeding] that has been extended a number of times, but we've gotten to the point where the trustee won't extend it any more.  So we're going to end up taking discovery on essentially the same issues that we're debating today and in addition, some equitable subordination issues and fraudulent transfer issues, all of which would be effected by this court's determination as to whether or not there's a valid security interest. . . .

In dismissing the appeal, the BAP, while cognizant of RCG's position, emphasized that the bankruptcy court's determination on the motion for relief is inextricably intertwined with the unresolved issues in the adversary proceeding, entertaining an appeal at this time would set "the stage for the fragmentation of appellate review."  In re Inofin Incorporated, 466 B.R. at 175.

Of course, fragmented appellate review must be juxtaposed against RCG's ability to retry the validity of its security interest and the commercial reasonableness of its foreclosure sale with the benefit of new counsel and hindsight.  In view of the absence of a critical requirement for application of summary judgment, i.e., finality, and the decision of the BAP, this Court is compelled, however, to deny the Trustee's Motion for Partial Summary Judgment on collateral estoppel grounds.  Accordingly,

**VI. CONCLUSION**

In view of the foregoing, the Court shall enter an order denying the Motion for Partial Summary Judgment on Counts I and II of the Chapter 7 Trustee's First Amended Complaint.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  January 17, 2013

21